# Schwoerer *v.* Lehigh Valley Railroad Company, Appellant.

*Negligence—Railroads—Grade crossings—"Stop, look and listen"— Case for jury.*

In a grade crossing case the evidence for the plaintiff tended to show that at the time of the accident, plaintiff was driving a spirited team hitched to a wagon, and that he stopped 110 feet from the track, and looked and listened, but seeing and hearing no trains he started on, seated well back in the wagon, and that his horses were struck when on the second track. At the point where he stopped plaintiff could see 1,153 feet. Between this point and the track was situated a building which obstructed the view. The witnesses for plaintiff testified in effect that in passing the building before a view of the tracks could be had, the horses would be on the tracks. The testimony on this subject was, however, not in entire harmony. There was also proof that the train was running at a high rate of speed, and without warning signals. There was also evidence that there was a curve at the angle of the intersection of the road and track, and that this angle was acute. *Held,* that the case was for the jury and that a verdict and judgment for plaintiff should be sustained.

Argued March 15, 1909. Appeal, No. 67, Jan. T., 1909, by defendant, from judgment of C. P. Bradford Co., Feb. T., 1908, No. 188, on verdict for plaintiff in case of Charles W. Schwoerer v. Lehigh Valley Railroad Company. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before
FANNING, P. J.

At the trial the jury returned a verdict of $20,000, upon
which judgment was entered for $15,000, all above that
amount having been remitted.

On a rule for judgment non obstante veredicto FAN-
NING, P. J., filed the following opinion:

This suit is brought by the plaintiff for injuries to his person
and property because of the alleged negligence of the defendant.

The plaintiff was seriously injured, his horses killed and
wagon demolished February 2, 1907, at a grade crossing on a
curve on the Lehigh Valley Railroad near Wyalusing, Pa., by
the "Milk Train" westward bound running at a high rate of
speed. This crossing is on an extensively traveled thorough-
fare, it being the main highway leading from Wyalusing bor-
ough to several towns and an extended thickly settled area of
country south of the Susquehanna river. Plaintiff approached
the crossing from the south driving a spirited team hitched to
a wagon upon which he had been drawing baled hay, and
stopped, as he states, from 100 to 125 feet from the tracks (the
place indicated by actual measurement is 110 feet), took off
his ear laps and mittens and looked and listened for approach-
ing trains. He started on and upon reaching the crossing at
the second track his horses were struck by the locomotive, but
were not sufficiently over the crossing at the time as they ap-
proached from the south to be seen by the engineer from the
north side of the train, which was moving west.

At the point where the plaintiff testifies he stopped, he
could see down the tracks to the whistling post about 1,153
feet, or not far from sixty-nine rods. Beyond that was an em-
bankment about seven feet high dotted with trees, etc. He
states that no train was in sight, no warning signals heard, and
"if there had been a train he could have seen it." He then
proceeded toward the railroad. Between the point where he
stopped and the tracks, obstructing the view eastward, was a
lumber office sixteen by thirty-two feet. The northeast corner
of this office is nearest the railroad track, its distance from

the southern rail of the west-bound track, where the accident occurred, being about forty-three feet.

The plaintiff was alone and sat near the rear wheels about twenty feet from the heads of the horses. The railroad line is on a curve at and in the vicinity of this crossing, which the plaintiff approached from within the circle, and easterly from the crossing the curve is to the southeast and seems pronounced because of the acute angle at which the highway intersects it, and the testimony as to just how far the track can be seen from the highway easterly immediately after passing the lumber office, the side from which the train injuring the plaintiff came, is not in entire harmony.

The testimony of Hiram E. Bull, a surveyor, is to the effect that the office building, as stated, is sixteen by thirty-two feet, with the end toward, but not square with the street, and fifty-six feet distant from its center. From the north side of the building at the front to the first rail of the track in line with the building is seventy-one feet, and from the northeast corner of the office building to the railroad track, in line with the rear of the building, is forty-three feet and four inches; but this northeast corner of the office building diagonally to the track, is somewhat nearer. He states that from the crossing one can see to the whistling post, and gives it as his opinion, that after passing the office building a few feet, or ten feet from the right of way line, a view of probably 300 feet can be had down the track, and when from twelve and one-half to fifteen feet from the east-bound track, the view extends to the whistling post.

Charles W. Schwoerer, the plaintiff, testifies in direct examination that at the point where he stopped, which was the usual stopping place for travelers, he had a view of the track and could see if a train was coming from the crossing eastward for 1,000 or 1,500 feet, and this notwithstanding the location of the office and box cars, which he claims were there (although a number of witnesses testify that they were on the switch on the opposite side of the track); that after passing the office he could not get a view of the track at all, and on redirect examination, that after passing the office building to a point where

he was able to see east any distance at all—200, 300 or 400 feet —his horses would be on the track and that at the place where he stopped, 110 feet from the track, there was nothing to obstruct his view at all. On recross-examination, he states that when he got by the lumber office his horses' feet would be on the east-bound track, about nine feet from the west-bound track, before he could see. He also testified that he was looking both up and down with his horses under control, but that they began to rear up and plunge when he got to the track and the cars struck him.

Ira Hoover and John A. Ford corroborated the plaintiff's description of the crossing.

Edward Dettrick testified that he was fireman on the engine at the time of the accident, and on the side where he could see plainly, and in a position to observe, and was looking; that he saw the team on the side of the office as it came out toward the railroad; that the team started up quickly as if on a trot or a run, and as appeared to him, sprang forward, and that the train at that time was going about forty-five to fifty miles an hour and might have been going five or six miles faster; that 150 feet of the crossing he could not see the plaintiff, but when he got up the least bit closer he could see him sitting on the wagon.

Although plaintiff stopped near the lumber office at the usual stopping place, he was still bound to continue to use his senses, and if he had a view down the track from where the train came 200 or 300 feet after passing the office a few feet, increasing and enlarging so that when he was still twelve or fifteen feet from the crossing he could have seen the east-bound track to the whistling post nearly sixty-nine rods away, as estimated by Mr. Bull while on the witness stand, had he looked. If such were the facts and there were no obstructions, the case would be ruled by Carroll v. Penna. R. R. Co., 12 W. N. C. 348, where the court said: "It is vain for a man to say that he stopped, looked and listened if in spite of what his eyes and ears must have told him, he went directly in front of a moving locomotive;" and the numerous other decisions down to Walsh v. Penna. R. R. Co., 222 Pa. 162, approving and set-

tling this legal principle, but this line of decisions applies only where the facts clearly bring the case within it: Beach v. Penna. R. R. Co., 212 Pa. 567.

The testimony was not clear and there was a dispute as to the distance the plaintiff could view the track to the east after passing the lumber office, whether the view was obstructed by the box cars and whether the defendant gave proper signals or warnings of the approach of the train which was running at a high rate of speed.

In view of all this testimony and the uncertainty owing to the curve at the acute angle of intersection and the alleged obstructions at what point a train could be seen after passing the lumber office, the fact that the train was running at a high rate of speed, and the testimony, though strongly contradicted that no warning signals were given, that the plaintiff was looking both up and down the track, taken in connection with the testimony of the brakeman and others that the horses sprang or started up when the plaintiff was committed to the act of crossing, the case, we think, was one for the jury: McNeal v. Ry. Co., 131 Pa. 184; McGill v. Pittsburg & Western Ry. Co., 152 Pa. 331; Davidson v. Ry. Co., 171 Pa. 522; Armstrong v. Penna. R. R. Co., 212 Pa. 228; Doyle v. Chester Traction Co., 214 Pa. 382; Vincent v. Lehigh Valley Transit Co., 220 Pa. 350.

For the reasons given, the rules above stated were discharged in the manner and upon the conditions as in the orders filed in this case February 2, 1909.

*Error assigned* was in refusing binding instructions for defendant.

*Henry Streeter* and *William Davies*, of *Davies & Davies*, with them *Frank W. Wheaton* and *Wm. Maxwell*, for appellant.

*L. T. Hoyt*, of *Hoyt & Schrier*, and *M. E. Lilley*, of *Lilley & Wilson*, for appellee.

PER CURIAM, May 20, 1909:

The judgment is affirmed on the opinion of the court below.